T.C. Memo. 2021-73

UNITED STATES TAX COURT

WHISTLEBLOWER 10084-16W, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 10084-16W.                    Filed June 9, 2021.

<u>Sealed</u>, for petitioner.

<u>Angela B. Reynolds</u> and <u>Justin D. Scheid</u>, for respondent.

MEMORANDUM OPINION

GOEKE, <u>Judge</u>:  Petitioner seeks review of a denial of a whistleblower

award by the Internal Revenue Service (IRS) Whistleblower Office (WBO).  On

August 31, 2020, respondent filed a motion for summary judgment under Rule

[*2] 121.[1]  Respondent contends that the WBO did not abuse its discretion in denying petitioner's claim for a whistleblower award.  We agree and accordingly will grant respondent's motion.

## Background

The following facts are based on the parties' pleadings and motion papers including a declaration, an affidavit, and the exhibits attached thereto.  We have jurisdiction under section 7623(b)(4).

On June 7, 2010, petitioner provided whistleblower information about the target taxpayer (target) to an attorney with respondent's Office of Chief Counsel and delivered the information by hand to an IRS special agent.  The whistleblower information related to the target's amortization of customer lists and deferral of tax on approximately $500 million of income earned on money market deposit accounts (MMDA).  The special agent promised to deliver the information to the IRS Large Business & International (LBI) unit.  The LBI unit is the operating division with subject matter jurisdiction over the target and the issues raised in the whistleblower claim.

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code, Title 26 U.S.C., in effect for all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[*3] On June 10, 2010, petitioner submitted Form 211, Application for Award for Original Information, to the WBO, asserting the amortization and MMDA issues. On June 17, 2010, the WBO sent a letter to petitioner acknowledging receipt of the claim and assigning a claim number. On that date, the claim was assigned to WBO Senior Tax Analyst Chu Pak. On July 9, 2010, WBO Analyst Pak referred petitioner's claim to a subject matter expert (SME) in the LBI unit. As of that date, the period of limitations for the target's 2006 tax year was set to expire in September 2010 and did expire in September 2010. As of that date, the period of limitations for the target's 2008 tax year was set to expire on September 14, 2012, and an examination for that year had been closed.

The SME in the LBI unit received the whistleblower claim on July 19, 2010, but did not begin a review of the information until January 28, 2011. On October 7, 2010, before the SME reviewed petitioner's claim, respondent opened an examination for the target's 2009 tax year. The 2010 tax year was later added to the examination. On November 19, 2010, the target filed an annual business disclosure with the Securities and Exchange Commission (SEC) known as Form 10-K on which it reported a $170 million settlement with "taxing authorities". The Form 10-K did not disclose the identity of the taxing authorities, the years at issue in the settlement, or the issues involved.

**[\*4]** Between January 28 and February 18, 2011, the SME reviewed petitioner's whistleblower information. In his workpapers, the SME noted that there had been examinations for tax years 2007 and 2008 that had been closed. The SME indicated his intent to recommend an examination for 2009. On February 18, 2011, the SME sent a memorandum to an examination team manager requesting that petitioner's whistleblower information be forwarded for examination.

After the examination was completed, respondent proposed adjustments for the target's 2009 and 2010 tax years relating to depreciation of computer equipment, loss or gain on the disposal of the computer equipment, and an international issue. The proposed adjustments were set forth in Form 4549, Income Tax Examination Changes, and Forms 886, Explanation of Items, for 2009 and 2010. Forms 4549 and 886 confirm that the proposed adjustments were not related to issues raised in petitioner's whistleblower claim.

On October 20, 2012, members of the examination team assigned to the target emailed each other about whether any member of the team had used information that petitioner provided in the whistleblower claim. Revenue Agent (RA) Patrick Jolly stated: "The Whistleblower did not provide any information that we did not already have." RA Jolly also stated that the target had disclosed the issues identified in the whistleblower claim on its 2008 return using Form

[*5] 8886, Reportable Transaction Disclosure Statement, and "provided a detailed discussion of the issue." RA Jolly was the only member for the examination team to respond to the email asking about use of the whistleblower information.

On December 17, 2012, the examination team manager signed Form 11369, Confidential Evaluation Report on Claim for Award, which stated that petitioner's whistleblower information had not been used during the examination to determine the proposed adjustments for 2009 and 2010. Form 11369 stated that both issues that petitioner raised in the claim "were already under consideration and the information provided by the whistleblower provided no additional value" and that "[t]here was no assessment for either of these issues." Form 11369 was forwarded to the WBO.

On January 17, 2013, WBO Analyst Pak emailed members of the examination team to request a copy of the examination report. On February 15, 2013, WBO Analyst Pak emailed a member of the examination team to request workpapers with respect to the amortization of customer lists. He specifically requested information about the proposed depreciation adjustments to determine whether they related to the customer list amortization issue identified in petitioner's whistleblower claim. WBO Analyst Pak reviewed the examination

[*6] report and workpapers to ascertain whether there were any adjustments attributable to petitioner's whistleblower information.

On April 20, 2015, petitioner's claim was reassigned to WBO Analyst Lev Glikman, who reviewed the administrative file and drafted an award recommendation memorandum (ARM) recommending a preliminary denial of a whistleblower award on the basis that the examination team reviewed the whistleblower information but respondent did not make any adjustments relating to the issues that petitioner raised in the whistleblower claim. The ARM explained: "The audit team has received the reported issues, but no adjustments have been proposed. Adjustments have been made to three other, unreported issues which are not attributable to the [whistleblower information]". The ARM also stated that the amortization and MMDA issues had been under consideration before the examination team received the whistleblower information.

On February 1, 2016, the WBO issued a preliminary denial letter to petitioner. After receiving the letter, petitioner initiated a telephone call with WBO Analyst Glikman during which petitioner explained the claim position and WBO Analyst Glikman explained the recommendation to deny an award. Petitioner did not provide a written response to the preliminary denial letter.

**[*7]** On March 28, 2016, WBO Analyst Glikman prepared an ARM recommending issuance of a final denial letter and explaining the grounds for denial of a whistleblower award including that the examination team reviewed the two issues raised in the whistleblower claim but did not propose any adjustments with respect to these issues and that adjustments had been made for three other issues that are not attributable to the whistleblower's information. The ARM also noted that the examination team received the whistleblower information in February 2011 after the audit had already commenced and both issues that petitioner identified were under consideration by the examination team before it received the whistleblower information.

On that same date, the WBO sent a final determination letter to petitioner denying a whistleblower award that stated:

> The claim has been recommended for denial because the information you provided did not result in additional tax, penalties, interest or additional amounts. The IRS reviewed the information you provided as part of an examination of the taxpayer. However, that review did not result in the assessment of additional tax, penalties, interest or additional amounts with respect to the issues you raised.

Discussion

Section 7623(a) authorizes the Secretary to pay awards to whistleblowers for detecting underpayments of tax. Awards under section 7623(a) are

**[*8]** discretionary, and we do not have jurisdiction to review discretionary awards. Section 7623(b) makes whistleblower awards mandatory where the Commissioner institutes an administrative or judicial action on the basis of the whistleblower information and collects proceeds from such an action. See Cooper v. Commissioner, 136 T.C. 597, 600-601 (2011). Section 7623(b)(4) further provides the Court with jurisdiction to review the WBO's determinations. We review the WBO's award determinations for abuse of discretion. Kasper v. Commissioner, 150 T.C. 8, 21-23 (2018). An abuse of discretion occurs when a determination is arbitrary, capricious, or without sound basis in fact or law. Murphy v. Commissioner, 125 T.C. 301, 320 (2005), aff'd, 469 F.3d 27 (1st Cir. 2006). Under the abuse of discretion standard, we limit our review to the administrative record. Kasper v. Commissioner, 150 T.C. at 20. We may supplement the administrative record in limited circumstances, none of which apply here. Van Bemmelen v. Commissioner, 155 T.C. __, __ (slip op. at 21-22) (Aug. 27, 2020).

Respondent contends that he is entitled to summary judgment under Rule 121 because there is no genuine issue of material fact and the WBO did not abuse its discretion in making its determination to deny an award. See Sundstrand Corp. v. Commissioner, 98 T.C. 518, 520 (1992), aff'd, 17 F.3d 965 (7th Cir. 1994)

[*9] (stating standard for summary judgment under Rule 121). We have recently stated with respect to the granting of summary judgment when we are asked to review a WBO determination:

> [The] summary judgment standard is not generally apt where we must confine ourselves to the administrative record to decide whether there has been an abuse of discretion. * * * [I]n a "record rule" whistleblower case there will not be a trial on the merits. In such a case involving review of final agency action under the APA [Administrative Procedure Act], summary judgment serves as a mechanism for deciding, as a matter of law, whether the agency action is supported by the administrative record and is not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. * * *

Van Bemmelen v. Commissioner, 155 T.C. at __ (slip op. at 25-26). The distinction in the standards for summary judgment does not affect the outcome in this case because the administrative record does not reflect any dispute of fact as to the WBO's determination and it supports the WBO's determination to deny an award. See Neal v. Commissioner, T.C. Memo. 2020-138, at *16.

The administrative record establishes that the WBO followed the procedures set forth in the Internal Revenue Manual (IRM) for the denial of a whistleblower award.

The examination team reviewed the issues and information raised in petitioner's whistleblower claim, petitioner's information was not used to propose

[*10] adjustments for the target's 2009 and 2010 tax years, and respondent did not make any adjustments for either year relating to the issues identified in petitioner's whistleblower claim. Accordingly, we hold as a matter of law that the WBO did not abuse its discretion in denying a whistleblower award.

Consistent with the procedures outlined in the IRM, the administrative record shows that the WBO forwarded petitioner's whistleblower information to the appropriate operating division. See IRM pt. 25.2.2.7(5) (June 18, 2010). An SME in the LBI unit evaluated the information and referred it for further review by an examination team. See sec. 301.7623-4(d)(2)(ii), Proced. & Admin. Regs.; IRM pt. 25.2.2.7(5), (8)(b) (June 18, 2010). The SME decided to refer the whistleblower information for investigation and forwarded the whistleblower information to the examination team assigned to the target's 2009 and 2010 tax years. See IRM pt. 25.2.2.7(8) (June 18, 2010) (stating that the SME will make a decision whether to recommend the lead offered by the whistleblower).

Upon conclusion of the examination, petitioner's claim was returned to the WBO with Form 11369. See IRM pt. 25.2.2.7(15) and (16) (June 18, 2010) (stating procedures for the examiner for the conclusion of the audit). Form 11369 explained that the examination team did not use the whistleblower information to make the proposed adjustments and the whistleblower information did not

[*11] contribute to the identification or development of any issues. See IRM pt. 25.2.2.7(16)(b) (stating the documentation from the examiner should contain a narrative to explain the contributions of the informant and the actions taken). Form 11369 states that respondent was in possession of the whistleblower information from disclosures on the target's return. The WBO reviewed Form 11369 and requested additional information from the examination team. See IRM pt. 25.2.2.7(18) (June 18, 2010). The WBO determined that the whistleblower information did not contribute to the proposed adjustments for 2009 and 2010. Accordingly, the WBO determined that petitioner was not entitled to a whistleblower award.

Petitioner contends that there is a genuine dispute of material fact as to whether respondent collected the $170 million settlement disclosed in the SEC filing as a result of petitioner's whistleblower information. Petitioner contends that respondent is the "taxing authorities" referred to in the SEC filing and that the settlement disclosed in the SEC filing resulted from the whistleblower information. Petitioner seeks an award on the basis of the $170 million settlement proceeds.

Petitioner filed a motion to compel discovery relating to the SEC filing and the 2010 settlement on July 1, 2020, which we denied on September 29, 2020,

**[*12]** citing <u>Van Bemmelen</u>. As we stated in our order denying petitioner's motion to compel, petitioner's allegations relating to the 2010 settlement are speculative and based on a highly improbable timeline under which respondent would have needed to use the information received in June 2010 to audit the target, make a determination, and assess tax which the target paid before November 2010. This theory is so implausible that it does not justify the supplementation of the administrative record. As we stated in our order, petitioner has made no showing of bad faith or an incomplete record. Furthermore, respondent has produced the target's transcripts for 2008 through 2010 which reflect the same information as the administrative record, namely that no proceeds were collected as a result of respondent's using the whistleblower information.

The administrative record establishes that the examination team did not use the whistleblower information to make any adjustments and the examination team had the relevant information in its possession from disclosures on the target's return. The administrative record clearly establishes that the WBO followed the IRM procedures in the evaluation and denial of petitioner's whistleblower claim. WBO Analyst Glikman properly relied on the records and representations of the examination team that it did not use petitioner's whistleblower information. The WBO determined that respondent did not collect proceeds from the target on the

**[\*13]** basis of petitioner's whistleblower information.  Accordingly, petitioner is not entitled to an award.  The WBO did not abuse its discretion in denying a whistleblower award.

We have considered all other arguments made by the parties, and to the extent not discussed above find the arguments to be irrelevant, moot, or without merit.  To reflect the foregoing,

<u>An appropriate order and decision</u>

<u>will be entered</u>.